# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE BOARD OF TRUSTEES OF THE UNIVERSITY   )
OF ALABAMA d/b/a/ UAB Hospital   )
619 19th Street South, MEB 300   )
Birmingham, AL 35249   )
   )
THE HEALTH CARE AUTHORITY FOR BAPTIST   )
HEALTH, AN AFFILIATE OF UAB HEALTH SYSTEM   )
d/b/a Baptist Medical Center East   )
301 Brown Springs Road   )
Montgomery, AL 36117   )
THE HEALTH CARE AUTHORITY FOR BAPTIST   ) Civil Action No. 1:22-cv-3367
HEALTH, AN AFFILIATE OF UAB HEALTH SYSTEM   )
d/b/a Baptist Medical Center South   )
301 Brown Springs Road   )
Montgomery, AL 36117   )
   )
   )
Plaintiffs,   )
   )
v.   )
   )
XAVIER BECERRA, in his official capacity   )
as Secretary of Health & Human Services   )
United States Department of   )
Health & Human Services,   )
200 Independence Avenue, S.W.   )
Washington, D.C.  20201   )
   )
Defendant.   )
_____)

## COMPLAINT

Plaintiffs, three hospitals that participates in the Medicare program and purchase drugs through the 340B Drug Pricing Program, bring this complaint against Defendant Xavier Becerra, in his official capacity as Secretary of the U.S. Department of Health and Human Services ("Secretary"), and alleges as follows:

### INTRODUCTION

1.      Plaintiffs seek judicial review of a final determination of the Secretary regarding the Hospital Outpatient Prospective Payment System ("OPPS") and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs for Calendar Year ("CY") 2022.  86 Fed. Reg. 63458, 63644 (Nov. 16, 2021) ("CY 2022  Final Rule" or "Final Rule").  Effective FY 2018 through the present, the Secretary has reduced payments for separately payable 340B acquired drugs to average sales price ("ASP") minus 22.5 percent, in contravention of the clear statutory requirements for calculating such reimbursement.  *See* 42 U.S.C. § 1395l(t)(14)(A)(iii)(I)-(II); s*ee* 82 Fed. Reg. 52356, 52493-511, 52622-25 (Nov. 13, 2017) ("CY 2018 Final Rule"); 83 Fed. Reg. 58818, 58079-81 (Nov. 21, 2018) ("CY 2019 Final Rule"); 84 Fed. Reg. 61142, 61317-27 (Nov. 12, 2019) ("CY 2020 Final Rule"); and 85 Fed. Reg. 85866, 86050 (Dec. 29, 2020) ("CY 2021 Final Rule").

2.      Specifically, Plaintiffs challenge the Secretary's CY 2022 Final Rule, and the Secretary's underpayment of Plaintiffs' claims paid pursuant to the Final Rule, as a continuation of the Secretary's policy that unlawfully reduces Medicare reimbursement rates for prescription drugs purchased by certain public and not-for-profit hospitals and clinics on a discounted basis under section 340B of the Public Health Service Act ("PHSA") (the "340B Program").  86 Fed. Reg. at 63646 (continuing the Secretary's current policy of paying ASP minus 22.5 percent for

340B acquired drugs).  Though this Court recently vacated the Secretary's rule *prospectively*, Plaintiffs seek recalculation of their 340B-purchased drug claims for dates of service preceding the Court's order.  *Am. Hosp. Ass'n v. Becerra*, No. 18-2084 (RC), 2022 WL 4534617, at *5 (D.D.C. Sept. 28, 2022) (prospectively vacating the drug reimbursement rate of ASP minus 22.5 percent for 340B hospitals in the CY 2022 Final Rule).

3.      Plaintiffs bring this action under the Social Security Act, 42 U.S.C. § 1395, *et seq.* (the "Medicare statute") and the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.* (the "APA").  The Plaintiffs allege that the Secretary acted *ultra vires*, exceeded his scope of authority under the Medicare statute in contravention of Congressional intent, as well as acted arbitrarily and capriciously, by reducing reimbursement payment for drugs purchased by Plaintiffs under the 340B Program.

4.      Congress enacted the 340B Program in 1992, lowering the cost of drugs for certain public and not-for-profit hospitals (like Plaintiffs) and federally funded clinics serving large numbers of low-income patients.  By so doing, Congress enabled these hospitals to "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services."  H.R. Rep. No. 102-384(II), at 12 (1992); *see also* 82 Fed. Reg. at 52493 & n. 18 (quoting House Report and noting that "[t]he statutory intent of the 340B Program is to maximize scarce Federal resources as much as possible, reaching more eligible patients").

5.      As this Court explained, "hospitals participating in the 340B Program purchase 340B drugs at steeply discounted rates, and when those hospitals prescribe the 340B drugs to Medicare beneficiaries, they are reimbursed by HHS at OPPS rates."  *Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 69 (D.D.C. 2018) *rev'd on other grounds*, 967 F.3d 818 (D.C. Cir. 2020) *rev'd and remanded sub nom. Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 (2022)).

6.      Starting January 1, 2018 (the effective date of the CY 2018 Final Rule), the Secretary began reimbursing covered outpatient drugs and biologicals acquired through the 340B Program at each drug's ASP minus 22.5 percent.  The Secretary extended that payment reduction to CYs 2019 through 2022 under the same policy.

7.      On June 15, 2022, however, the Supreme Court decided *American Hospital Association*, concluding that the Secretary's policy is unlawful.  The Court held that the Medicare statute does not "afford HHS discretion to vary the reimbursement rates [for drugs] for that one group of hospitals [i.e., hospitals that purchase drugs through the 340B Program] when, as here, HHS has not conducted the required survey of hospitals' acquisition costs."  *Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 (2022).  While *American Hospital Association* addressed the Secretary's policy for CYs 2018 and 2019, the Supreme Court's conclusion that the Secretary's policy is "contrary to statute and unlawful" is equally applicable to subsequent years, including CY 2022, where the Secretary has cut reimbursement to 340B hospitals using the exact same approach. Additionally, the Secretary's decision to reduce payment rates for CY 2022 is a violation of both the Secretary's authority under the Medicare statute and the purpose and design of the PHSA provisions establishing the 340B Program.  It is also arbitrary and capricious agency action under the APA.

8.      Plaintiffs have presented claims to the Secretary seeking payment at the statutorily required rate of ASP plus 6 percent.  *See* Exhibit A.[1]  These claims, however, have been paid under the Secretary's CY 2022 policy at a rate of ASP minus 22.5 percent, resulting in underpayment of each of those claims.  Further engagement of the Medicare appeals process for such claims is futile

---

[1] Plaintiffs omit attaching patient-level claims to this Complaint due to the significant amount of protected health information contained therein, but can submit a dedacted copy if requested by the Court.

3

as the Plaintiffs have historically challenged individual claims on appeal only to have those appeals dismissed as not subject to review by the Secretary's contractor.   Moreover, the Secretary's policy has not since changed.

9.      On September 28, 2022, this Court vacated CMS's payment rate of ASP minus 22.5 percent prospectively and for the remainder of the 2022 calendar year.  Plaintiffs seek relief from this Court ordering the Secretary to recalculate *all* of Plaintiffs' calendar year 2022 340B drug claims that were paid pursuant to that unlawful rate by instead using the statutorily required rate of ASP plus 6 percent.  *See* 42 U.S.C. § 1395w-3a(b)(1)(A)-(B).  As this Court has already held, these payment reductions are unlawful and the Secretary must pay Plaintiffs the statutorily mandated rate for all of Plaintiff's 2022 340B drug claims with dates of service preceding this Court's recent order.

## PARTIES

10.      Plaintiffs are three hospitals that participate in the Medicare program and the 340B Program that are affected by the unlawful reimbursement cut for 340B drugs:

   a. The Board of Trustees of The University of Alabama d/b/a UAB Hospital, Medicare Provider No. 01-0033;

   b. The Health Care Authority for Baptist Health, an Affiliate of UAB Health System d/b/a Baptist Medical Center East, Medicare Provider No. 01-0149; and

   c. The Health Care Authority for Baptist Health, an Affiliate of UAB Health System d/b/a Baptist Medical Center South, Medicare Provider No. 01-0023.

11.      Defendant Xavier Becerra is the Secretary of the United States Department of Health and Human Services, which administers the Medicare program established under title XVIII of the Social Security Act.  Defendant Becerra is sued in his official capacity only.  The Centers for Medicare & Medicaid Services ("CMS") is the federal agency to which the Secretary

has delegated administrative authority over the Medicare and Medicaid programs.  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

### JURISDICTION AND VENUE

12.     This action arises under the Medicare statute, title XVIII of the Social Security Act, 42 U.S.C. § 1395, section 340B of the Public Health Services Act, 42 U.S.C. § 256b, and the APA, 5 U.S.C. § 551.

13.     This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).  Due to the Secretary's Final Rule, Plaintiffs have been paid amounts for covered 340B drugs that are approximately 30 percent lower than the rate prescribed by 42 U.S.C. § 1395*l*(t)(14)(A)(iii). Pursuant to the procedures of 42 U.S.C. § 1395ff, Plaintiffs have presented claims to the Secretary in the form of a concrete request for additional Medicare reimbursement that challenge the Secretary's authority to reduce reimbursement for covered 340B drugs contrary to 42 U.S.C. § 1395*l*(t)(14)(A)(iii).  *See* Exhibit A.  Further administrative appeal and review of Plaintiffs' claims is futile because the Secretary's administrative adjudicators are bound by the Secretary's Final Rule and the Secretary has already determined that he will not revise this policy, leaving Plaintiffs with no recourse other than federal court review.  *See Am. Hosp. Ass'n v. Azar*, 410 F. Supp. 3d 142, 154 (D.D.C. 2019) *rev'd on other grounds*, 964 F.3d 1230 (D.C. Cir. 2020), *cert. denied sub nom. Am. Hosp. Ass'n v. Becerra*, 141 S. Ct. 2853 (2021), *reh'g denied sub nom. Am. Hosp. Assn. v. Becerra*, No. 20-1113, 2021 WL 3711645 (U.S. Aug. 23, 2021) (finding that exhaustion of claims would have been futile because the Secretary did not argue that further administrative review was necessary or that it would give the agency opportunity to self-correct; the Secretary already considered and rejected plaintiffs' arguments; additional administrative review would not

develop the factual record or provide the court with further agency expertise; and no administrative review body could override the agency's binding regulations).   Additionally, the Secretary's contractors have historically received Plaintiffs' appeals challenging the OPPS rates for drugs acquired under the 340B Program and have dismissed those challenges based on their interpretation of statutory preclusion of administrative and judicial review under 42 U.S.C. Sections 1395ff and 1395oo.

14.    Alternatively, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States.

15.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district.

16.    An actual controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. § 706.

## STATEMENT OF FACTS

### A.    Statutory and Regulatory Framework

17.    Under the 340B Program, certain hospitals serving a disproportionate share of low-income individuals and federally funded clinics (so-called "covered entities") may purchase outpatient prescription drugs at discounted prices.  Drug manufacturer participation in the 340B Program is essentially mandatory:  manufacturers must participate as a condition of having their drugs covered by Medicaid, *see* H.R. Rep. 102-384, at 12 (1992), and they cannot discriminate against covered entities in the distribution of drugs by, *e.g.*, setting minimum purchase amounts or treating covered entities differently from other purchasers during drug shortages, *see* 59 Fed. Reg. 25110, 25111 (May 13, 1994).

18.     Covered entities are statutorily defined at PHSA § 340B(a)(4) and include qualifying hospitals, Ryan White HIV/AIDS program grantees, black lung clinics, rural referral centers, critical access hospitals, Title X family planning clinics, and other institutions that primarily serve the poor, indigent, or the under- or uninsured.  The 340B Program is designed to enable covered entities to purchase 340B drugs for all eligible patients, including patients with Medicare or private insurance, at the reduced cost but still bill Medicare at the OPPS rate prescribed under the Medicare statute.

19.     According to the Government Accountability Office, access to reduced price medications enables covered entities "to expand the type and volume of care they provide to the most vulnerable patient populations."  U.S. Dep't of Health & Human Servs., Justification of Estimates for Appropriations Committees at 325 (2017).

20.     Plaintiffs are each a "covered entity" under the 340B Program and are paid under the OPPS system.

**B.     Medicare OPPS Reimbursement**

21.     Medicare is a federal health insurance program for eligible disabled individuals and senior citizens.  42 U.S.C. §§ 1395 *et seq*.  Plaintiff provides hospital services to Medicare beneficiaries that qualify for reimbursement through Medicare.

22.     In 1997, Congress directed the Secretary to create a hospital Outpatient Prospective Payment System through which Medicare was to pay for services offered in hospital outpatient departments.  *See* 42 U.S.C. § 1395*l*.

23.     Starting in 2004, Congress ordered the Secretary to set reimbursement rates for separately payable drugs not otherwise bundled into the payment for an outpatient service.  *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173,

§ 621, 117 Stat. 2307, codified at 42 U.S.C. § 1395*l*(t)(14).  This payment rate covers <u>all</u> applicable drugs whether purchased through the 340B Program or on the open market by non-340B covered entities.

24.     By statute, the Secretary is directed to set payment rates for all such drugs using one of two alternative processes:

      a.  The Secretary may set the payment rate at the average hospital acquisition cost for the drug for that year (to vary, at the discretion of the Secretary, by "hospital group" as defined by "relevant characteristics"), "as determined by the Secretary taking into account . . . hospital acquisition cost survey data," 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I); or

      b.  If "hospital acquisition cost data are not available," the Secretary may use the average sales price for the drug established by 42 U.S.C. § 1395w-3a and "as calculated and adjusted by the Secretary as necessary for purposes of this paragraph," 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II).

25.     The Secretary has paid for such drugs pursuant to the second option, and adjusted the rate as required by statute to ASP plus 6 percent.  42 U.S.C. § 1395w-3a(b)(1)(A)-(B); *see also* 77 Fed. Reg. 68210, 68387-89 (Nov. 15, 2012) (acknowledging that hospital acquisition data is not available and adding the 6 percent to account for overhead and administrative costs).

26.     There is no separate rate established only for 340B drugs or any alternative method for the Secretary to establish a different payment methodology for 340B drugs.  This statutory default rate of ASP plus 6 percent was applied without adjustment until January 1, 2018.

27.     Notwithstanding this clear statutory framework, on July 13, 2017, the Secretary proposed to lower the Medicare reimbursement rate for drugs purchased under the 340B Program by adopting a third methodology not authorized by the statute.  The Secretary changed the payment rate for 340B drugs to ASP minus 22.5 percent.  82 Fed. Reg. 33558, 33634 (July 20, 2017).  The Secretary did not have the data necessary to "precisely calculate the price paid by 340B hospitals for [any] particular covered outpatient drug," and so instead relied on an estimate.  *Id.*  According

8

to the Secretary, the new rate would better recognize "the significantly lower acquisition costs of such drugs incurred by a 340B hospital," and "better represent[] the average acquisition cost for these drugs and biologicals." *Id.*

28.     The Secretary finalized this proposal on November 13, 2017 over the strong objection of commenters.  82 Fed. Reg. at 52362; *see also*, *e.g.*, Exhibit B (comments submitted to CY 2018 Final Rule).  This significant change in reimbursement affected CYs 2018 and 2019, and effectively eliminated the benefit of the 340B Program for covered entities like Plaintiffs because it eliminates the difference between the steep discounts offered by the 340B Program and full OPPS reimbursement.

29.     The detrimental and impermissible 340B rate cuts were adopted again in CYs 2020 and 2021.  *See* 83 Fed. Reg. at 58981 ("we are finalizing our proposals without modification [to] continu[e] the 340B Program policies that were implemented in CY 2018 with the exception of the way we are calculating payment for 340B-acquired biosimilars"); *see also* 84 Fed. Reg. at 61325 ("we are finalizing our proposal . . . to pay ASP minus 22.5 percent for 340B-acquired drugs including when furnished in nonexcepted off-campus [provider-based departments] . . . [continuing] the 340B Program policies that were implemented in CY 2018 with the exception of the way we are calculating payment for 340B-acquired biosimilars").

30.     On June 15, 2022, however, the Supreme Court found unlawful the Secretary's 340B policy in *American Hospital Association,* making clear that the Secretary exceeds his statutory authority by reducing payment to 340B hospitals without first actually conducting a survey of hospitals' drug acquisition cost data.  *See Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 ("absent a survey of hospitals' acquisition costs, HHS may not vary the reimbursement rates for 340B hospitals.").  In other words, the Court squarely rejected the Secretary's attempt to rely on

the second statutory option—42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II)—as the authority to support his policy.  The Court ultimately concluded that "HHS's 2018 and 2019 reimbursement rates for 340B hospitals were therefore contrary to the statute and unlawful." *Id*.

31.     The Secretary maintained these unlawful rates into CY 2022, *see* 86 Fed. Reg., 63644, until this Court vacated those rates on September 28, 2022 for the remainder of CY 2022. *See Am. Hosp. Ass'n v. Becerra*, No. 18-2084 (RC), 2022 WL 4534617, at *5.

32.     In addition to violating plain language of the statute, the Secretary's CY 2022 Final Rule also exceeds his authority in that it undermines the 340B Program by depriving eligible hospitals of a critical portion of resources Congress intended to provide those hospitals via the 340B Program.  Elimination of these resources has put public and not-for-profit covered entities into even more precarious financial situations, curtailing their ability to provide essential healthcare services and programs in their communities.  Therefore, the Secretary's efforts to "align," 82 Fed. Reg. at 52495, the purchase price of 340B drugs with reimbursements for those drugs is directly contrary to Congressional intent to create a differential between reimbursement and purchase price to generate additional resources for covered entities.

33.     At bottom, the Secretary's CY 2022 Final Rule—reducing Medicare reimbursement rates 340B drugs by utilizing a rate of ASP minus 22.5 percent—is nothing more than a continuation of policy that has been soundly rejected by the Supreme Court as unlawful and contrary to the Medicare statute.

## C.     Judicial Review and Plaintiff's Claim

34.     A plaintiff must typically satisfy two requirements before seeking judicial review under 42 U.S.C. § 405(g):  a plaintiff must "present" their claim to the Secretary for a decision, and then must exhaust all available administrative remedies.  *Mathews v. Eldridge*, 424 U.S. 319,

328 (1976). The presentment requirement is not waivable, although the exhaustion may be. *See Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825-26 (D.C. Cir. 2018). Exhaustion may be excused where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law[.]" *DL v. District of Columbia*, 450 F. Supp. 2d 11, 17 (D.D.C. 2006). For example, courts have recognized the futility of exhaustion where plaintiffs "do not challenge an individual … decision by [the agency] . . . but instead challenge the agency's 'policy, pattern, and practice' or 'systemic failure to comply with' federal law. *See id*. at 18; *see also Tataranowicz v. Sullivan*, 753 F. Supp. 978, 987 (D.D.C. 1990), *rev'd on other grounds*, 959 F.2d 268 (D.C. Cir. 1992).

35.     Here, the Plaintiffs have presented claims for payment to the Medicare program for their separately payable drugs affected by the Final Rule.     *See* Exhibit A. Per the Secretary's policy for CY 2022, Medicare has paid drug claims submitted by the Plaintiffs at ASP minus 22.5 percent. *Id*. Plaintiffs, therefore, challenge the Secretary's underpayment of Plaintiffs' 340B drug claims pursuant to the Secretary's Final Rule.

36.     For CYs 2018 through 2021, the Plaintiffs filed "Requests for Redetermination" to the Secretary's contractor pursuant to 42 U.S.C. § 1395ff,  challenging Medicare's failure to pay the statutorily prescribed rate for their 340B claims.  The Secretary's contractor, however, has repeatedly dismissed the challenges to the OPPS rates for drugs acquired under the 340B Program based on its interpretation of the statutory preclusion of administrative and judicial review under 42 U.S.C. Sections 1395ff and 1395oo.  *Id*.  Similarly, the Medicare contractor governing Plaintiffs' claims has a statement on its website stating that "[i]n accordance with Medicare's national payment policy for drugs acquired under the 340B drug program, drugs reimbursed under

OPPS are not eligible for an administrative review.  Appeal requests received by Palmetto GBA will be dismissed."[2]

37.     Immediate judicial review is therefore appropriate because Plaintiffs' claims raise pure legal issues, there are no factual disputes that could impede their jurisdictional resolution, and there is nothing to indicate that the administrative appeals process could result in the agency overturning the Final Rule.  *See Hall v. Sebelius*, 689 F. Supp. 2d 10, 23-24 (D.D.C. 2009) ("exhaustion may be excused where an agency has adopted a policy or pursued a practice of general applicability that is contrary to law" (quotation omitted)); *see also Am. Hosp. Ass'n*, 410 F. Supp. 3d at 154.  As evidenced by prior redetermination decisions and the posting on the contractor's website, the Secretary has taken the position that there can be no administrative review of 340B Program reimbursement disputes.  Further administrative review is futile.

**COUNT 1**
**CY 2022 Final Rule:**
**Violation of the Social Security Act and Administrative Procedure Act**

38.     The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

39.     The APA permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. §§ 706(2)(A), 706(2)(C).

40.     When "Congress has directly spoken to the precise question at issue," this Court must give effect to Congress's unambiguously stated intent.  *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).  It is a "core administrative-law principle that an

---

[2]https://www.palmettogba.com/palmetto/jma.nsf/DIDC/B2RKND4347~Appeals~Frequently%20 Asked%20Questions (October 6, 2022).

agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regulatory Gp. v. EPA*, 134 S. Ct. 2427, 2446 (2014).

41.     Congress has unequivocally permitted the Secretary two avenues—and no others—to adjust reimbursement for covered outpatient drugs and biologicals.   *See* 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I)–(II).   On the one hand, the Secretary may set reimbursement based on hospital acquisition cost survey data.  42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I).   On the other, if such data are not available, the Secretary may adjust the average sales price.   42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II).   The Supreme Court found that the Secretary's attempt to reduce reimbursement rates for 340B hospitals by contriving a third avenue is contrary to statute and unlawful.  *See Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896.

42.     The Secretary's CY 2022 Final Rule precisely mirrors this unlawful policy.   Thus, the Secretary's continuation of this unlawful policy to lower the Medicare reimbursement rate for drugs purchased under the 340B Program to ASP minus 22.5 percent is therefore *ultra vires*, contrary to clear statutory directive, and beyond the Secretary's limited authority.

43.     For these and other reasons, the Secretary's rate cut in the CY 2022 Final Rule is unlawful.

**COUNT 2**
**CY 2022 Final Rule:**
**Violation of the Social Security Act, 42 U.S.C. § 405(g), and Administrative Procedure Act**

44.     The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

45.     The APA permits judicial review of agency actions, findings and conclusions that are "arbitrary, capricious" or "an abuse of discretion."  5 U.S.C. § 706(2)(A).

46.     The Secretary's decision in the CY 2022 Final Rule to continue to decrease reimbursement rates for separately payable drugs purchased under the 340B Program by nearly 30 percent impermissibly conflates two alternative statutory methods for setting payment rates and is therefore arbitrary and capricious and an abuse of discretion.

47.     The Secretary's policy is also inconsistent with Congress's intent in enacting he 340B Program, which was to assist covered entities in "stretch[ing] scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services."  H.R. Rep. No. 102-384(II), at 12.

48.     There is no dispute about the invalidity of the Secretary's initial payment amounts, *see American Hosp. Ass'n v. Becerra*, Slip. Op. at 9 (June 15, 2022), and the correct payment amounts are prescribed by statute, *see* 42 U.S.C. § 1395w-3(a), meaning that Plaintiffs were underpaid for their 340B drug claims that were paid pursuant to the Secretary's unlawful policy, entitling Plaintiffs to relief under § 405(g).  Indeed, this Court has already vacated the Secretary's payment rate for the remainder of CY 2022.  *Am. Hosp. Ass'n v. Becerra*, No. 18-2084 (RC), 2022 WL 4534617, at *5.

49.     For these and other reasons, the Secretary's rate cut in the CY 2022 Final Rule is unlawful and the Plaintiffs were underpaid for their 2022 340B drug claims submitted to the Secretary with dates of services preceding this Court's recent order.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request an Order:

a.     Declaring that the CY 2022 Final Rule is *ultra vires* and exceeds the Secretary's statutory authority in violation of the Social Security Act, as well as arbitrary and capricious in violation of the APA;

b.      Vacating and setting aside the Final Rule as to the changes made to the 340B drug payment methodology;

c.      Directing the Secretary to use the methodology used in CY 2017 for all 340B Program payments for dates of service in CY 2022;

d.      Requiring the Secretary to reimburse Plaintiffs for the underpayment of Plaintiffs' 2022 340B drug claims, i.e., the difference between amounts paid for 340B drugs pursuant to the Final Rule (ASP minus 22.5 percent) and what would have been paid for those same drugs under the CY 2017 methodology required by statute (ASP plus 6 percent) for all 2022 340B drug claims with dates of service prior to this Court's September 28, 2022 order;

e.      Requiring the Secretary to pay legal fees and costs of suit incurred by the Plaintiffs pursuant to 28 U.S.C. § 2412;

f.      Awarding Plaintiffs interest pursuant to 42 U.S.C. § 1395*l*(j) and § 1395ff(b)(2)(C)(iv); and

g.      Providing such other just and proper relief as the Court may consider appropriate.

Respectfully submitted,

/s/ *Christopher P. Kenny*
Christopher P. Kenny (D.C. Bar No. 991303)
Mark D. Polston (D.C. Bar No. 431233)
Tamra Moore (D.C. Bar No. 488392)
Michael L. LaBattaglia (D.C. Bar No. 1601580)
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006
202.626.9253 (phone)
202.626.3737 (fax)
CKenny@kslaw.com

Date:  November 2, 2022