# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |  |
|---|---|---|---|
| BOARD OF TRUSTEES OF THE | : | | |
| UNIVERSITY OF ALABAMA *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 22-3367 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 17, 18 |
| | : | | |
| XAVIER BECERRA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION TO DISMISS

## I. INTRODUCTION

The Board of Trustees of the University of Alabama, the Health Care Authority for Baptist Health East, an Affiliate of UAB Health System, and Health Care Authority for Baptist Health South, an Affiliate of UAB Health System (collectively, "Plaintiffs") filed a consolidated action against Xavier Becerra,[1] in his official capacity as Secretary of Health and Human Services ("HHS") ("Defendant" or the "HHS Secretary"). Plaintiffs initially pursued administrative appeals within the Medicare program to recover underpayments for 340B outpatient drugs. When those appeals proved unsuccessful, Plaintiffs filed separate civil actions under 42 U.S.C. § 405(g) and 42 U.S.C. § 1395ff to recover the underpaid amounts. Although Defendant has since refunded the principal underpayments, Plaintiffs allege that the HHS Secretary has failed to pay interest on those underpayments pursuant to 42 U.S.C. § 1395*l*(j) and

---

[1] Robert F. Kennedy, Jr. was sworn in as the Secretary of HHS on February 13, 2025 and is automatically substituted for Xavier Becerra as a defendant in this action pursuant to Fed. R. Civ. P. 25(d).

42 C.F.R. § 405.378.  In this action, Plaintiffs move for summary judgment seeking an order

from this Court directing the HHS Secretary to pay outstanding interest and fully reimburse

Plaintiffs.  Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' Mot."), ECF No. 17-1.  Defendant provides

multiple justifications for declining to pay interest on Plaintiffs' underpaid claims, but ultimately,

all of them argue that the language in 42 U.S.C. § 1395*l*(j) is unclear and that the HHS

Secretary's interpretation of the statute should be given deference.  Additionally, the HHS

Secretary moves to dismiss for lack of jurisdiction because he argues that Plaintiffs' claims are

moot and Plaintiffs are not entitled to recover interest.  Opp'n Pls.' Mot. Summ. J. & Cross-Mot.

Dismiss ("Def.'s Cross-Mot."), ECF No. 18.  Plaintiffs opposed Defendant's motion, *see* Pls.'

Mem. Supp. Mot. Summ. J. & Opp'n Def.'s Mot. Dismiss ("Pls.' Reply"), ECF No. 20, which

Defendant subsequently replied to, *see* Reply Supp. Cross-Mot. Dismiss ("Def.'s Reply"), ECF

No. 22, and Plaintiffs responded to Defendant's reply with an unopposed surreply that the Court

granted leave to file, *see* Pls.' Surreply to Def.'s Reply Mem. Supp. Cross-Mot. Dismiss ("Pls.'

Surreply"), ECF No. 23-1.  For the foregoing reasons, Plaintiffs' motion for summary judgment

is denied and Defendant's cross-motion to dismiss is granted.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are three hospitals that participate in the Medicare program and purchase drugs

at discounted rates under section 340B of the Public Health Service Act ("PHSA") (the "340B

Program").  *See*, Compl. ¶¶ 10, 18, ECF No. 1.  In 1992, Congress established the 340B Program

to reduce drug costs for certain non-profit and public hospitals and federally funded clinics

serving many low-income patients in an effort to maximize the use of limited federal funds to

reach more patients.  *Id*. at ¶ 4.  "Hospitals participating in the 340B Program purchase 340B

drugs at steeply discounted prices, and when those hospitals prescribe the 340B drugs to

Medicare beneficiaries they are reimbursed by HHS at [Hospital Outpatient Prospective Payment System ("]OPPS["]) rates."  *Id.* at ¶ 5 (quoting *Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 69 (D.D.C. 2018) *rev'd on other grounds*, 967 F.3d 818 (D.C. Cir. 2020), *rev'd and remanded*, *Am. Hosp. Ass'n v. Becerra* ("*AHA*"), 596 U.S. 724 (2022).  Prior to Fiscal Year ("FY") 2018, Medicare reimbursed all hospitals at a rate of 6% above the average sales price ("ASP") for outpatient drugs.  42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II) (citing 42 U.S.C. § 1395w–3a).  Beginning in FY 2018, the HHS Secretary reduced the payment rate for separately payable 340B-acquired drugs to 22.5% below the ASP, which Plaintiffs alleged was in violation of the explicit statutory requirements for calculating such reimbursements.  *See* 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I)–(II); *see also* Medicare Program: Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs, 82 Fed. Reg. 52356, 52493–511, 52622–25 (Nov. 13, 2017) (codified at scattered parts of 42 C.F.R.) ("CY 2018 Final Rule"); Medicare Program: Changes to Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs, 83 Fed. Reg. 58818, 58079–81 (Nov. 21, 2018) (codified at scattered parts of 42 C.F.R.) ("CY 2019 Final Rule"); Medicare Program: Changes to Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs; Revisions of Organ Procurement Organizations Conditions of Coverage; Prior Authorization Process and Requirements for Certain Covered Outpatient Department Services; Potential Changes to the Laboratory Date of Service Policy; Changes to Grandfathered Children's Hospitals-Within-Hospitals; Notice of Closure of Two Teaching Hospitals and Opportunity To Apply for Available Slots, 84 Fed. Reg. 61142, 61317–27 (Nov. 12, 2019) (codified at scattered parts of 42 C.F.R.) ("CY 2020 Final Rule"); Medicare Program: Hospital Outpatient Prospective Payment and Ambulatory Surgical

Center Payment Systems and Quality Reporting Programs; New Categories for Hospital

Outpatient Department Prior Authorization Process; Clinical Laboratory Fee Schedule:

Laboratory Date of Service Policy; Overall Hospital Quality Star Rating Methodology;

Physician-Owned Hospitals; Notice of Closure of Two Teaching Hospitals and Opportunity To

Apply for Available Slots, Radiation Oncology Model; and Reporting Requirements for

Hospitals and Critical Access Hospitals ("CAHs") To Report COVID-19 Therapeutic Inventory

and Usage and To Report Acute Respiratory Illness During the Public Health Emergency

("PHE") for Coronavirus Disease 2019 ("COVID-19"), 85 Fed. Reg. 85866, 86050 (Dec. 29,

2020) (codified at scattered parts of 42 C.F.R.) ("CY 2021 Final Rule"); and Medicare Program:

Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and

Quality Reporting Programs; Price Transparency of Hospital Standard Charges; Radiation

Oncology Model, 86 Fed. Reg. 63458, 63644 (Nov. 16, 2021) (codified at scattered parts of 42

C.F.R.) ("CY 2022 Final Rule"). *Id.*

  The reduction to the 340B reimbursement rate was challenged in the lawsuit *AHA*.  596

U.S. 724.  In *AHA*, the plaintiff hospital association argued that the HHS Secretary lacked the

authority to set such a reduced payment rate, contending that it violated the Social Security Act

and the Administrative Procedure Act ("APA").  Pls.' Mot. at 4; *see AHA,* 596 U.S. at 734.

After years of litigation, the Supreme Court ruled in favor of AHA in 2022, holding that the HHS

Secretary's reduced reimbursement rate for the 340B Program was unlawful.  596 U.S. at 739.

The Supreme Court found that the HHS Secretary failed to reimburse 340B hospitals at the

statutorily prescribed rate and further determined that changing the reimbursement rate for 340B

hospitals in 2018 was impermissible.  *Id.*  The Supreme Court remanded the case for further

proceedings, leaving unresolved the issue of how to address the underpayments to the affected hospitals. *Id.*

In separate proceedings, Plaintiffs initiated administrative appeals for reimbursement, but the HHS Secretary argued that their claims were not eligible for administrative review. Pls.' Mot. at 4. As a result, Plaintiffs separately filed these lawsuits to challenge aspects of the agency's 340B payment policy from calendar years 2018 through 2022. *See generally*, Compl. Those cases were consolidated on April 8, 2024. Min. Order, *Bd. of Trs. of the Univ. of Ala. et al. v. Becerra*, No. 22-cv-3367 (D.D.C.) (granting Plaintiffs' unopposed motion to consolidate cases for briefing and trial). Plaintiffs bring this consolidated action under the Social Security Act, 42 U.S.C. § 1395, *et seq.* (the "Medicare statute") and the APA, 5 U.S.C. § 551, *et seq.*, alleging that the HHS Secretary "exceeded his scope of authority under the Medicare statute in contravention of Congressional intent, as well as acted arbitrarily and capriciously, by reducing reimbursement payment for drugs purchased by Plaintiffs under the 340B Program." Compl. ¶ 3. Like the plaintiff's efforts in *AHA*, Plaintiffs in this action sought to expedite the timeline for addressing administrative remedies by filing these actions, but the Court stayed Plaintiffs' cases while awaiting a resolution on *AHA*. Def.'s Cross-Mot. at 1.

After the Supreme Court's ruling in *AHA*, the HHS Secretary took administrative action to rectify the underpayments. *See* Medicare Program; Hospital Outpatient Prospective Payment System: Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018–2022 ("Final Remedy Rule"), 88 Fed. Reg. 77150, 77172 (codified at 42 C.F.R. pt. 419) (Nov. 8, 2023). He calculated the underpayments by comparing the amounts that 340B Program hospitals received with what they should have received under the ASP plus 6% rule. *Id.* at 77161 (the payments amounted to "the difference between what an affected 340B covered entity hospital

received for 340B-acquired drugs . . . and what they would have received for 340B-acquired drugs if the 340B adjustment had not been in place.").  The HHS Secretary then issued lump sum payments to said hospitals for the underpaid amounts from 2018 to 2022.  *Id*.  However, the remaining issue to be resolved by the Court in this case is whether the HHS Secretary owes interest on these now reimbursed underpayments given the delayed payment.  Pls.' Mot. at 4.  Although the HHS Secretary acknowledged the underpayment by providing Plaintiffs with lump sum payments, he declined to pay interest on the refunded amounts because he did not believe the law required payment of interest on these underpayments.  *Id.*  In short, the HHS Secretary asserts that the Supreme Court's decision in *AHA* was not a "final determination" under the statute that Plaintiffs claim triggers the HHS Secretary's obligation to pay interest under the Social Security Act.  Def.'s Cross-Mot. at 1.

### III.  STATUTORY AND REGULATORY FRAMEWORK

Part A of the Medicare statute covers inpatient hospital care, home health care, and hospice services.  *See* 42 U.S.C. § 1395c.  This case centers on Medicare Part B reimbursements for outpatient drugs provided by hospitals.  Specifically, it involves the interpretation and implementation of statutory provisions governing those reimbursements and related interest payments.  Part B of Medicare offers supplemental coverage for additional types of care, including outpatient hospital care.  *Id*. §§ 1395j–1395k.  42 U.S.C. § 1395*l* requires the HHS Secretary to reimburse hospitals for outpatient drugs according to the ASP formula.  *Id*. § 1395*l*.  Congress instructed the HHS Secretary to make payments from the Federal Supplementary Medicare Insurance Trust Fund (commonly known as the Part B Trust Fund) for services that are "payable under" § 1395*l*, in accordance with the formulas outlined in § 1395*l*.  *Id.* § 1395*l*(a).  Section 1395*l*(t)(14)(A)(iii)(II) further requires the Secretary to reimburse hospitals for

separately payable outpatient drugs at a rate of ASP plus 6%. *Id*. § 1395*l*(t)(14)(A)(iii)(II)

(mandating the HHS Secretary to pay a drug's ASP when there is no hospital acquisition cost

survey). In addition to prescribing reimbursement formulas, Congress also clarified that

> *[w]henever* a final determination is made that the amount of payment made . . . under this part …was in excess of or less than the *amount of payment that is due*, and payment of such excess or deficit is not made . . . within 30 days of the date of the determination, interest shall accrue on the balance of such excess or deficit not paid or offset.

*Id*. § 1395*l*(j) (emphasis added).

The implementing regulation, 42 C.F.R. § 405.378(b), applies to Medicare Part B

reimbursements and requires the HHS Secretary to pay interest on underpayments that occur

after a "final determination." 42 C.F.R. § 405.378(b).

> In cases in which a[] [Notice of Payment Reconciliation ("]NPR["]] is not used as [the] notice of determination (that is, primarily under part B), *one of the following constitutes a final determination*— (A) A written determination that an overpayment exists and a written demand for payment; or (B) *A written determination of an underpayment*.

*Id*. § 405.378(c)(1)(ii) (emphasis added). This regulation requires the "pay[ment of] interest on

underpayments" accruing "from the date of the final determination as defined in paragraph (c) of

this section . . . for each full 30-day period that payment is delayed." *Id*. § 405.378(b)(1)–(2). In

light of this statutory and regulatory framework, the present dispute centers on whether the

Supreme Court's decision in *AHA* constituted a "final determination" that triggered the HHS

Secretary's obligation to pay interest. While Plaintiffs argue that the Supreme Court's decision

in *AHA* constitutes a "final determination" under the statute and regulation triggering the HHS

Secretary's obligation to pay interest, Defendant argues that the Supreme Court's decision in

*AHA* cannot be considered a "final determination" because it was not an administrative decision

from the HHS Secretary or one of his intermediaries. *See generally*, Def.'s Cross-Mot.

7

Although the Supreme Court in *AHA* concluded that the disparate payment rates violated the APA, it did not propose a remedy for the underpayment suffered by 340B program hospitals. Instead, the matter was remanded, and the HHS Secretary proposed a rule to remedy the underpayments from 2018 through 2022. In November 2023, the HHS Secretary published the Final Remedy Rule, which detailed how the underpayments would be reimbursed to affected hospitals. 88 Fed. Reg. 77150 (Final Remedy Rule detailing the resolution of the OPPS 340B-acquired drug payment policy for calendar years 2018–2022, including the amounts owed to affected hospitals and the timeline for repayment). The Final Remedy Rule specifies the compensation process for the OPPS 340B-acquired drug payment policy for the years 2018-2022, detailing the payments owed to the affected hospitals and providing a timeline for the repayment. *Id.* However, although other plaintiffs have voluntarily dismissed their claims as a result of the Final Remedy Rule and the reimbursement payments made pursuant thereto, Plaintiffs in these actions have not because they claim they are entitled to interest payments on the delayed reimbursement payments. Pls.' Mot. at 9–10 (arguing that 42 U.S.C. § 1395*l*(j) does not limit the HHS Secretary's obligation to pay interest to underpayments identified by the agency or its intermediaries, and does not bar interest payments following what Plaintiffs contend is a final court ruling in their favor).

## IV.  LEGAL STANDARDS

### A.  Rule 56

In a motion for summary judgment under the APA, "the standard set forth in Rule 56(a) does not apply due to the court's limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013) (citations omitted). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision

when review is based upon the administrative record." *Bloch v. Powell*, 227 F. Supp. 2d 25, 30–31 (D.D.C. 2002) (internal quotation marks omitted) (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)).  Under the APA, the Court must invalidate agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  "[T]he scope of review under the 'arbitrary and capricious' standard is narrow, and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "Arbitrary and capricious" review is "highly deferential" and "presumes the agency's action to be valid."  *Envt'l. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981).  "[T]he court considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purportedly relied have some basis in the record, and whether the agency considered the relevant factors."  *Fund for Animals*, 903 F. Supp. at 105 (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)) (other citations omitted).  Only a "brief statement" is required, as long as the agency explains "why it chose to do what it did."  *Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (citations omitted).

### B.  Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction[,]" and it is presumed by law that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *see also Gen. Motors Corp. v. Envt'l. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (stating that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").  "[B]ecause subject-matter jurisdiction is both an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal

court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Rather, a plaintiff must establish by a preponderance of the evidence that the court has subject-matter jurisdiction in response to a motion to dismiss under Rule 12(b)(1). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

As subject-matter jurisdiction pertains to the court's authority to hear the claim, the court must scrutinize the plaintiff's factual allegations more closely when addressing a Rule 12(b)(1) motion than it would for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Therefore, the court is "not limited to the allegations [in] the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). When appropriate, "the court may consider the complaint supplemented by undisputed facts evidenced in the record," or a combination of "undisputed facts [and] the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### C. Rule 12(b)(6)

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless,

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are "couched as [] factual allegation[s,]" *see Twombly*, 550 U.S. at 555 (internal quotation marks omitted) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

## V.  ANALYSIS

In their motion for summary judgment, Plaintiffs argue that the HHS Secretary owes them interest for the delayed payment of the 340B Program reimbursements, asserting that the statute's plain language requires interest to be paid "[w]henever a final determination is made that the amount of payment made under this part . . . to a provider of services . . . was in excess of or less than the amount of payment that is due." 42 U.S.C. § 1395*l*(j).  Plaintiffs contend that the Supreme Court's decision in *AHA* was precisely such a final determination, where the Court concluded that the HHS Secretary "acted unlawfully by reducing the reimbursement rates for 340B hospitals," and thus underpaid those hospitals.  *AHA*, 596 U.S. at 736; *see also* Pls.' Mot. at 10–16.

In response, the HHS Secretary denies that he is required to make such interest payments because (1) Congress has not waived sovereign immunity to require interest payments arising

from judicial rulings (rather than administrative determinations), such as the Court's decision in

*AHA*, (2) the Supreme Court's ruling does not constitute a final determination of underpayment

because it did not specifically calculate the amount owed to Plaintiffs, and (3) a judicial ruling

can only be considered a written determination of an underpayment if it is the result of a request

for Expedited Access to Judicial Review ("EAJR") pursuant to a specific statutory provision that

explicitly provides for interest payments.  Def.'s Cross-Mot. at 10–16, 19–22; *see also* Def.'s

Reply at 4–8.  The HHS Secretary further argues that (1) Plaintiffs' claims should be dismissed

because their claims are moot given that the repayments they received have provided them all the

relief to which they are entitled, and (2) Plaintiffs are not entitled to interest because their

complaint does not challenge any agency decision regarding interest having been brought before

the HHS Secretary's interest determination.  At the center of the HHS Secretary's overlapping

arguments is the argument that any claim for interest lacks merit because the *AHA* opinion is not

a "final determination" because it does not meet the statutory requirements in 42 U.S.C.

§ 1395*l*(j).  *See generally* Def.'s Cross-Mot.  The motions are ripe for review, and the Court will

address the parties' arguments in turn.

### A. Mootness of Plaintiffs' Claims

The Court will begin by considering the HHS Secretary's position that Plaintiffs' actions

should be dismissed for lack of jurisdiction because Plaintiffs' claims for reimbursement are now

moot.  *See* Def.'s Cross-Mot. at 7.  The HHS Secretary explains that Plaintiffs in these

consolidated actions challenged HHS's 340B payment policy for the years 2018 through 2022,

which they argued unlawfully reduced Medicare reimbursement rates for drugs purchased by

certain hospitals under the 340B Program.  *Id.*  However, because the HHS Secretary has

modified the 340B reimbursement policy to conform with the prospective relief in *AHA* and has

already reimbursed Plaintiffs for the amounts due under the prescribed reimbursement formula, the HHS Secretary contends that Plaintiffs' claims are moot.  *Id.*  Plaintiffs respond that their claims are not moot and that the HHS Secretary "ignores that the Plaintiffs have requested interest since the beginning of this litigation six years ago." Pls.' Mot. at 1.  Plaintiffs argue that the HHS Secretary's "refusal to pay interest on those belated payments to Plaintiffs . . . is precisely *why* this case remains a live dispute; Plaintiffs seek a judgment for *meaningful relief* from this Court through an order that the Secretary honor his statutory duty to pay interest." *Id.* at 4–5.  For the foregoing reasons, the Court finds that Plaintiffs' claim for interest is not moot.

Mootness is an Article III jurisdictional doctrine that "limits federal courts to deciding actual, ongoing controversies." *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011) (quoting *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (en banc)).  The same Article III case-or-controversy requirement that underpins the standing doctrine means that federal courts lack jurisdiction to decide moot cases. *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 285 F. Supp. 3d 128, 132 (D.D.C. 2018).  "A case or claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014)).  Thus, mootness deprives the court of jurisdiction and requires dismissal when "intervening events make it impossible to grant the prevailing party effective relief, or when the [c]ourt's decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Id.* (cleaned up and citations omitted).  "The party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies." *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019).  Courts must "evaluat[e] mootness 'through all stages' of the litigation in order to ensure there remains a

live controversy." *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

The Court denies the HHS Secretary's motion to dismiss for mootness because the issues of mootness and the merits are inextricably intertwined. At the heart of this action is Plaintiffs' claim that they are entitled to interest on belated payments. Pls.' Mot. at 9–10. If Plaintiffs have a legal right to that interest, then their claim remains live and capable of meaningful judicial relief. If, however, they are not entitled to such interest, then they have already received the full extent of the remedy to which they are due, and their claims would be moot. Thus, the merits and mootness questions are two sides of the same coin.

This is precisely the situation in which courts have cautioned that jurisdictional dismissal is improper. In assessing mootness at the pleading stage, a court must assume that the plaintiff will "prevail on the merits." *Boose v. District of Columbia*, 786 F.3d 1054, 1058 (D.C. Cir. 2015); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction."), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. ___, 145 S.Ct. 2190 (2025); *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005) ("A bad theory (whether of liability or of damages) does not undermine federal jurisdiction."). These principles underscore that mootness cannot be decided by assuming that the HHS Secretary is correct on the merits. In fact, at the motion to dismiss stage, the Court must assume that Plaintiffs are entitled to interest payments.

The HHS Secretary argues that the case is moot because Plaintiffs have already received payments consistent with the revised 340B payment policy. Def.'s Cross-Mot. at 1–2 (arguing that Plaintiffs are not entitled to interest payments because they did not challenge an agency

decision, they were paid within the statutory 30-day window, and the *AHA* decision was a judicial ruling in a different case, not a statutory "final determination"). But as Plaintiffs point out, and as the Court acknowledges, they have sought interest on those delayed payments from the outset of the litigation. Pls.' Mot. at 1. Whether that interest is required by law is precisely the disputed legal issue. The HHS Secretary's argument that there is no further relief the Court can grant simply assumes that Plaintiffs have no right to interest—*i.e.*, that they will lose on the merits. This is the very type of "confus[ion of] mootness with the merits" that the Supreme Court cautioned against in *Chafin v. Chafin*, 568 U.S. 165, 174 (2013). In *Chafin*, the Court reiterated that a case is not moot simply because a party believes no further remedy is warranted. 568 U.S. at 174. Rather, a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. SEIU, Loc. 1000*, 567 U.S. 298, 307 (2012) (cleaned up and citations omitted). Here, if Plaintiffs are correct that they are entitled to interest, a court order awarding that interest would plainly constitute "effectual relief." *Id.*

This situation mirrors the reasoning in *Hurry v. FDIC*, where the Court rejected the agency's mootness argument because it was premised entirely on its own view of the merits. *Hurry v. Fed. Deposit Ins. Corp.*, 2020 WL 2838567, at *4 (D.D.C. 2024). There, the FDIC claimed that its closure of a file constituted final agency action, thus mooting the plaintiff's claim for compelled action. *Id.* But the Court held that "the FDIC's mootness argument is premised on the contention that there is no relief for the Court to grant because the agency has already taken a final agency action," which went "directly to the merits of Hurry's claim." *Id.* That argument was not that the Court is unable to provide relief, but rather that the Court should decide that it is unnecessary to do so. *Id.* (citing *Chafin*, 568 U.S. at 174). Similarly, here, the HHS Secretary argues that the Court need not act because the agency has fulfilled its obligations.

But that is the contested legal issue.  As in *Hurry*, this "goes directly to the merits," *see id.*, and thus the Court must assume that Plaintiffs are entitled to the interest they claim in determining whether the controversy is live.  Accordingly, the HHS Secretary's motion to dismiss for lack of jurisdiction on mootness grounds must be denied.

## B. The Court's Interpretation of 42 U.S.C. § 1395*l*(j)

Having determined that the issue of mootness and the issue of the merits are entirely intertwined, the Court will now turn to the merits.  The issue at hand is whether the *AHA* decision qualifies as a "final determination" that triggers interest payments pursuant to 42 U.S.C. § 1395*l*(j).  In *AHA*, the Supreme Court ruled that the HHS Secretary's reduced reimbursement rate for 340B drugs was unlawful, and it remanded the case for further proceedings.  *AHA*, 596 U.S. at 736, 739.  However, the Court did not specifically address whether this ruling constitutes a "final determination" triggering interest payments and the parties have contrasting views on that based on their respective interpretation of the statute.  If the *AHA* decision is considered a "final determination" under § 1395*l*(j), the HHS Secretary would be obligated to pay interest on the underpaid amounts with accrual beginning thirty days after issuance of that decision; and if not, Plaintiffs would not be entitled to interest under the current statutory framework because the HHS Secretary reimbursed the underpayment within 30 days of the issuance of the Final Remedy Rule, which the HHS Secretary argues is the date of his "final determination."  Def.'s Reply at 17 n.4.

Given the parties' disagreement over the interpretation of 42 U.S.C. § 1395*l*(j), the Court first examines the statute's text, structure, purpose, and history.  The tools of statutory interpretation all favor the HHS Secretary's reading: that the phrase "final determination" in 42 U.S.C. § 1395*l*(j) refers exclusively to an administrative decision issued by the HHS Secretary or

a fiscal intermediary, rather than a judicial ruling. Accordingly, the Court finds that the Supreme Court's decision in *AHA* does not qualify as a "final determination" under the statute.

Courts are required to "interpret statutes . . . based on the traditional tools of statutory construction," regardless of the surrounding context. *Pac. Gas & Elec. Co. v. FERC*, 113 F.4th 943, 947 (D.C. Cir. 2024) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024)). In keeping with established interpretive principles, the analysis "begin[s] with the text" of the statute and turns to "the ordinary meaning of its key terms." *Id.* at 948 (first quoting *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018); then quoting *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024)). When the statutory language is clear, courts are bound to "enforce [it] according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). Even when a statute is ambiguous, courts must independently assess whether an agency has acted within the limits of its statutory authority. *Loper Bright*, 603 U.S. at 412. Here, 42 U.S.C. § 1395*l*(j) provides:

> *[w]henever* a final determination is made that the amount of payment made . . . under this part . . . was in excess of or less than the *amount of payment that is due*, and payment of such excess or deficit is not made . . . within 30 days of the date of the determination, interest shall accrue on the balance of such excess or deficit not paid or offset.

42 U.S.C. § 1395*l*(j) (emphasis added). The implementing regulation, 42 C.F.R. § 405.378(b), governs Medicare Part B reimbursements and mandates that the HHS Secretary pay interest on underpayments that occur after a "final determination." 42 C.F.R. § 405.378(b). The regulation stipulates that:

> In cases in which a[] [Notice of Payment Reconciliation ("]NPR["")] is not used as [the] notice of determination (that is, primarily under part B), *one of the following constitutes a final determination*— (A) A written determination that an overpayment exists and a written demand for payment; or (B) *A written determination of an underpayment*.

*Id.* § 405.378(c)(1)(ii) (emphasis added). Plaintiffs argue that "[t]he plain language of § 1395*l*(j) requires the Secretary to make an interest payment pursuant to the Supreme Court's determination of an underpayment in *AHA.*" *See* Pls.' Mot. at 10–16. They contend that the plain language of the statute requires the HHS Secretary to pay interest whenever a final determination of an underpayment is made, and the judicial decision in *AHA* constitutes a final determination for the purposes of this action. *Id.* Plaintiffs assert that because the Supreme Court found that the underpayments under the 340B Program were unlawful in their holding in the *AHA* opinion, § 1395*l*(j) mandates the HHS Secretary to pay interest on the underpaid amount. *Id.*; *see also* 42 U.S.C. § 1395*l*(j). They also claim that, contrary to the HHS Secretary's argument, the statute does not restrict interest payments to administrative determinations, asserting that judicial decisions such as *AHA* can trigger the interest obligation. *See* Pls.' Mot. at 11–12. On the other hand, the HHS Secretary argues that 42 U.S.C. § 1395*l*(j) does not apply to the *AHA* decision because it was a judicial ruling and that the statute's interest provision is triggered only by an administrative determination by the HHS Secretary or one of his intermediaries. Def.'s Cross-Mot. at 13. Defendant also contends that, because the *AHA* decision did not calculate the specific amount of underpayment, that judicial opinion does not constitute a final determination that can trigger the interest requirement. *Id.* at 16.[2]

---

[2] The HHS Secretary separately argues that Plaintiffs cannot seek judicial review of interest payments under 42 U.S.C. § 1395*l*(j) because their complaint fails to identify any final agency action denying interest, and therefore, the interest issue is outside the scope of their claims. *See* Def.'s Cross-Mot. at 8–9. This raises a separate issue of whether a final agency action, such as a specific denial of interest, has been alleged in the Complaint and is properly subject to review under the APA. Notably, the current complaint was filed before the HHS Secretary's Final Remedy Rule was issued, which arguably is the final agency action that could be properly reviewed. This issue is distinct from Plaintiffs' claim that they have consistently sought interest payments, and it does not contest that they have sought interest from the outset of this action. Instead, it questions whether the operative Complaint in this case alleges a final agency action that is properly before the Court for review under § 706 of the APA. Because this

The regulation implementing § 1395*l*(j)'s interest provision, 42 C.F.R. § 405.378(c), defines "final determination" in the context of administrative determinations about over- or underpayment, without reference to judicial decisions. *See* § 405.378(c)(1)(ii) ("A written determination that an overpayment exists and a written demand for payment; or [a] written determination of an underpayment."). The regulatory history, including the 1991 regulation, clarifies that "[t]he definition of final determination in § 405.376(c) [subsequently renumbered to implementing regulation 42 C.F.R. § 405.378(c)][3] applies to administrative, not judicial, determinations." Medicare Program; Changes Concerning Interest Rates Charged on Overpayments and Underpayments, 56 Fed. Reg. 31332, 31335 (1991). This interpretation has remained consistent over decades of administrative and judicial decisions. *See e.g.*, *Cosgrove v. Sullivan*, 999 F.2d 630, 633 (2d Cir. 1993) ("However, the mention of subsequent judicial decisions relates only to *stopping* rather than *starting* the accrual of interest. There is thus nothing in the regulations indicating that judicial decisions are final determinations commencing the accrual of interest on underpayments, and the Preamble is consistent with the regulations." (emphasis in original)); *see also Hospice of N.M., LLC v. Sebelius*, 2010 WL 11590925, at *2 (D.N.M. July 13, 2020) ("In the Court's opinion, however, § 1395*l*(j) refers to a final 'administrative' determination of benefits, not a final judicial or appellate determination. In other words, [§] 1395*l*(j) requires the payment of interest on any excess or deficit not refunded to HHS or paid to the service provider within thirty days of HHS having made a final

_____

issue is one of the adequacy of the pleadings and can be easily remedied through amendment of the pleadings (for which leave to do so is to be liberally granted), the Court declines to rule on this basis.

[3] 42 C.F.R. § 405.376(c) was subsequently renumbered to implementing regulation 42 C.F.R. § 405.378(c). *See* 42 C.F.R. § 405.378 (noting that the regulation was "[r]edesignated at 61 FR 63745 Dec. 2, 1996; 69 FR 45607 July 30, 2004; 74 FR 47468 Sept. 16, 2009").

administrative determination of benefits.").  This view also aligns with sovereign immunity

concerns: for interest to attach against the agency, Congress must speak clearly.  *See Tex.*

*Clinical Labs, Inc. v. Johnson*, 2009 WL 1574465, at *5 (N.D. Tex. June 4, 2009).  Here,

§ 1395*l*(j) fails that test, because Congress has not explicitly waived the government's sovereign

immunity subjecting it to interest payments that accrue upon the issuance of a judicial opinion,

rather than an agency decision.

Given that the statute does not define "final determination" and is ambiguous on whether

judicial decisions such as *AHA* qualify, the Court recognizes that 42 U.S.C. § 1395*l*(j) grants the

HHS Secretary broad discretion to define what qualifies as a "final determination" for purposes

of triggering interest payments.  This interpretation reflects the HHS Secretary's long-held

administrative position supported by regulatory action and judicial precedent.  *See Kisor v.*

*Wilkie*, 588 U.S. 558, 577–79 (2019).  The agency's implementing regulation at 42 C.F.R.

§ 405.378(c)(1)(ii) defines "final determination" as an administrative, not judicial, decision.

Therefore, the Court interprets this regulation to mean that judicial decisions do not trigger the

interest provision under § 1395*l*(j).

Turning to the *AHA* Supreme Court decision, it addressed the legality of HHS's

reimbursement methodology for 340B hospitals, holding that the agency had exceeded its

statutory authority by reducing rates without conducting a survey.  596 U.S. at 739 ("We

conclude that, absent a survey of hospitals' acquisition costs, HHS may not vary the

reimbursement rates for 340B hospitals.").  However, the Court did not direct HHS to make any

payments, nor did it specify the amount owed to any provider.  Instead, the Court remanded the

matter to the Circuit, who remanded it to this Court, to determine the appropriate remedy.  *Id.*

(remanding the action because "this Court is not the forum to resolve that policy debate").  As

courts in similar contexts have repeatedly recognized, judicial opinions that merely identify legal errors in agency policy do not substitute for formal administrative determinations. *See, e.g.*, *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014) ("[T]he court erred by directing the Secretary how to calculate the hospitals' reimbursements, rather than just remanding after identifying the error." (internal citation omitted)); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("Once, therefore, the district court held that the Secretary had misinterpreted § 1395ww(d)(5)(A)(iv), it should have remanded to the Secretary for further proceedings consistent with its conception of the statute. Not only was it unnecessary for the court to retain jurisdiction to devise a specific remedy for the Secretary to follow, but it was error to do so." (internal citation omitted)).

Plaintiffs' interpretation of § 1395*l*(j)'s interest triggering provision also overlooks the Medicare statute's structure. While § 1395*l*(j) does not specify whether a "final determination" includes a judicial decision, other Medicare provisions explicitly provide interest to accrue upon the issuance of a judicial decision. *See, e.g.*, 42 U.S.C. § 1395*oo*(f)(2) (authorizing a court to award interest when a hospital successfully seeks judicial review of a cost report payment determination); *see also* § 1395ff(b)(2)(C)(iv) (granting interest to providers who successfully make a facial challenge to a regulation or other agency policy after seeking EAJR). Clearly, Congress knew how to provide for judicially-triggered accrual dates when it chose to, but it did not do so in § 1395*l*(j), indicating an intent not to treat judicial decisions as final determinations for purposes of interest accrual under that provision.[4] *Tex. Clinical Labs, Inc. v. Sebelius*, 612

---

[4] Plaintiffs also argue that the HHS Secretary's reliance on the EAJR process as the exclusive avenue for securing interest payments is a post hoc rationalization. Pls.' Mot. at 21–23; Pls.' Reply at 22–24. They assert that the HHS Secretary originally insisted that providers had no right to challenge the underpayments at all and only introduced the EAJR argument after losing in court. *Id.* However, the Court finds that the HHS Secretary's reliance on the EAJR

F.3d 771, 775–76 (5th Cir. 2010) ("[T]he Medicare statute . . . does not define what type of rulings constitute 'final determinations' upon which interest should accrue.  Nor is its language so clear as to only permit a single interpretation."); *Saad v. SEC*, 980 F.3d 103, 108 (D.C. Cir. 2020) ("Given a readily available alternative reading," courts "should avoid adopting such an internally contradictory interpretation of a statute.").  And again, given sovereign immunity concerns, Congress's silence in § 1395*l*(j) on whether interest is to accrue upon the issuance of a judicial opinion dictates that the statute should be narrowly construed against providing for such interest accrual.  Given the statutory context and regulatory requirements, the *AHA* Supreme Court opinion cannot qualify as a "final determination" under § 1395*l*(j).

But even if a judicial opinion could generally constitute a "final determination," the *AHA* opinion would still not meet the statutory requirements to trigger an award of interest here.  The *AHA* ruling addressed only a narrow legal question: whether the statute allowed HHS the authority to vary the reimbursement rates absent a survey.  *AHA*, 596 U.S. at 739 ("We conclude that, absent a survey of hospitals' acquisition costs, HHS may not vary the reimbursement rates for 340B hospitals.").  The Court held that such discretion did not exist, but it explicitly noted that it "need not address potential remedies."  *Id*. at 734.  When this Court remanded the matter so that a remedy for the underpayments identified in *AHA* would be provided, it recognized that

---

process as the necessary procedural pathway for securing interest payments does not represent a new legal rationale for the agency's underlying decision.  Rather, it is a more detailed articulation of the agency's longstanding position that interest is not due absent a statutory basis, and that such a basis is lacking here because Plaintiffs never pursued or received EAJR.  This is consistent with the principle that "when an agency provides further explanation of its decision in the course of litigation, it is not necessarily engaging in post hoc rationalization."  *Nat'l Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D.D.C. 1996), *aff'd in part*, *Troy Corp. v. Browner*, 120 F.3d 277 (D.C. Cir. 1997).

there were "multiple ways for HHS to remed[y] its underpayments" and that HHS retained discretion in selecting a remedy. *Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019).

Indeed, decisions involving underpayments often conclude that Medicare owes payment for a service but do not calculate a specific amount, and such decisions do not qualify as "final determinations" under 42 C.F.R. § 405.378. *See* Medicare Program: Changes to the Medicare Claims Appeal Procedures, 70 Fed. Reg. 11420, 11466 (Mar. 8, 2005) (codified at scattered parts of 42 C.F.R.) ("ALJ decisions involving underpayments often indicate that Medicare must make payment for a service, but do not calculate a specific underpayment amount to be made. These determinations are not final, because the contractor must still calculate the underpayment amount by determining the principal amount to be paid."); *see also id.* ("[T]he date of the final determination for purposes of determining when interest charges on underpayments begin accruing is the date that the contractor completes the calculation and makes the written determination of the principal amount that Medicare owes."). The regulation is clear: a final determination occurs only when the contractor completes the written calculation and issues the underpayment determination. The *AHA* ruling, like such ALJ decisions, did not constitute a final determination triggering an entitlement to interest because it did not calculate a specific underpayment.

Moreover, Plaintiffs cannot rely on the *AHA* decision for accrual of their right to interest because they were not parties to that case, and, regardless, their claims involve different years than those at issue in *AHA*. The *AHA* litigation involved the 2018 and 2019 payment years and was limited to the hospitals that challenged HHS's rate reduction policy. *AHA*, 596 U.S. at 734–36. Plaintiffs now seek interest for 2020 through 2022; years that were not at issue in *AHA*. The Supreme Court's ruling cannot serve as a "final determination" for providers not before the

Court, nor for years beyond those at issue. *See Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (emphasis in original) (internal quotation omitted).

Plaintiffs challenge the above-described interpretation of the statute by arguing that the HHS Secretary's decision to withhold interest on underpayments while simultaneously collecting interest on overpayments represents an impermissible statutory asymmetry. Pls.' Mot. at 21–23; Pls.' Reply at 21–23.[5]  They argue that such differential treatment allows the HHS Secretary to "hold underpayments for yearslong litigation," *see* Pls.' Mot. at 21, without compensating providers, even after a judicial determination in the providers' favor. Plaintiffs characterize this as both substantively unfair and contrary to statutory purpose. *Id.*  However, as the HHS Secretary points out, Plaintiffs fail to point to any statute that would entitle them to interest, and Plaintiffs mischaracterizes both the structure of § 1395*l*(j) and the nature of the statutory scheme Congress enacted. Def.'s Cross-Mot. at 24–26.

In determining whether the HHS Secretary's interpretation of § 1395*l*(j) is in accordance with the law, the "court must exhaust all the traditional tools of construction"—considering the law's "text, structure, history, and purpose." *Kisor*, 588 U.S. at 575 (internal quotation marks and citations omitted). Here, the statutory text of § 1395*l*(j) is silent with respect to interest on underpayments and expressly provides for the accrual of interest only in the context of

---

[5] Although Plaintiffs also assert that the HHS Secretary's reading of § 1395*l*(j) is "arbitrary and capricious," *see* Pls.' Mot. at 21–23; Pls.' Reply at 21–23, their challenge is best understood as a claim that the HHS Secretary's interpretation of § 1395*l*(j) is "contrary to" law. 5 U.S.C. § 706.  But as the Court has set forth, the HHS Secretary's interpretation of § 1395*l*(j) is not only reasonable, but the Court has concluded it is the "single, best meaning" of that statute. *Loper Bright*, 603 U.S. at 400.

*overpayments*.  Congress's specification that interest accrue for overpayments—but silence on underpayments—means the Court cannot presume a waiver of sovereign immunity for interest on underpayments.  Therefore, the purported textual asymmetry of which Plaintiffs complain is not a congressional oversight but reflects a deliberate legislative choice.  Again, the statute provides:

> Whenever a final determination is made that the amount of payment made . . . was *in excess* of . . . the amount of payment that is due, and payment of such excess . . . is not made (or effected by offset) within 30 days of the date of the determination, interest shall accrue on the balance of such *excess* . . . not paid or offset.

42 U.S.C. § 1395*l*(j) (emphasis added).  The provision does not mirror the mechanism for underpayments, nor does it create a general entitlement to interest.

Congress's enactment of § 1395*l*(j) addressed a specific concern: "the assessment of interest [on overpayments] will provide incentives for debtors to repay overpayments more promptly."  *Cosgrove*, 999 F.2d at 633.  Thus, any difference in treatment "does not undermine the Secretary's statutory interpretation" because the law was "concerned with facilitating the recoupment of overpayments, rather than underpayments."  Def.'s Cross Mot. at 26 (quoting *Cosgrove*, 999 F.2d at 633).  This rationale reveals that the statute was narrowly targeted at quickly recouping funds erroneously overpaid to providers, not at compensating providers for delays in receiving payments due.  The overall structure of the Medicare Act, which contains many provisions that promote overpayment recovery, further supports this intentionally one-sided framework.  In this context, the HHS Secretary's interpretation of § 1395*l*(j)—allowing interest to accrue only on overpayments—is not only reasonable, but also aligns with the statute's purpose.  *Cosgrove*, 999 F.2d at 633 (emphasizing that Congress enacted § 1395*l*(j) to

encourage expedient repayment of overpayments by imposing interest to foster faster compliance).[6]

In short, based on the language of 42 U.S.C. § 1395*l*(j), its statutory context, purpose, and implementing regulations, the most natural reading of the provision is that the Supreme Court's decision in *AHA* does not constitute a "final determination."[7]  Courts must exercise "independent judgment in determining the meaning of statutory provisions," rather than defer to agency interpretations.  *Loper Bright*, 603 U.S. at 371.  Only the courts, not agencies, have the constitutional authority to conclusively interpret the law.  *Id.* ("As relevant here, the APA specifies that courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action, . . . even those involving ambiguous laws.") (cleaned up).  Applying that principle here, and reading § 1395*l*(j) in accordance with its "single, best meaning," *id.* at 400, the Court finds that the *AHA* Supreme Court opinion does not constitute a "final determination" under the statute and therefore does not trigger an interest obligation under § 1395*l*(j).

---

[6] While Plaintiffs' concerns about delayed compensation due to prolonged litigation are understandable, they do not justify departing from the statutory framework, which does not mandate interest payments on underpayments during the pendency of litigation.  The APA already provides recourse for unreasonable agency delay.  *See* 5 U.S.C. §§ 555(b), 706(1).

[7] The Court's conclusion regarding its statutory interpretation of § 1395*l*(j) is also consistent with the doctrine of sovereign immunity, which limits the ability of individuals to recover interest from the government absent express authorization.  *See Libr. of Congress v. Shaw*, 478 U.S. 310, 315 (1986) ("This basic rule of sovereign immunity, . . . gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress." (citing to *United States ex rel. Angarica v. Bayard,* 127 U.S. 251, 260 (1888) ("The case, therefore, falls within the well-settled principle, that the United States are not liable to pay interest on claims against them, in the absence of express statutory provision to that effect."))).  As set forth above, Plaintiffs have failed to identify an entitlement to interest *expressly* authorized by Congress.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 17) is

**DENIED** and Defendant's Cross-Motion to Dismiss (ECF No. 18) is **GRANTED**.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 6, 2025                                      RUDOLPH CONTRERAS
                                                           United States District Judge